**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZACHARY PAUL WEIDNER,** | : | **CIVIL ACTION NO. 3:12-CV-0709** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN, Commissioner** | : | |
| **of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

Presently before the court in the above-captioned matter is the complaint (Doc. 1) of plaintiff Zachary Paul Weidner ("Weidner") seeking review of a decision of the Commissioner of Social Security[1] ("Commissioner") denying Weidner's claim for social security and disability benefits, the Commissioner's answer thereto (Doc. 4), and the transcript (Doc. 5) of the administrative proceedings. The issues are fully briefed, (Docs. 7, 12, 15), and the matter is ripe for review. For the reasons that follow, the court will vacate the Commissioner's decision and remand the above-captioned matter for further proceedings and issuance of a new decision.

---

[1] Michael J. Astrue's term as Commissioner of Social Security expired on January 19, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, who succeeded Astrue and was appointed Acting Commissioner of Social Security on February 14, 2013, is substituted as defendant in this action. See FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").

## I.   Factual and Procedural History

Zachary Paul Weidner ("Weidner") was born on September 18, 1984, and

was twenty-one (21) years old at the time of alleged disability onset.  (Tr. at 157)[2].

He has the equivalent of a high school education.  (Id. at 39, 418).  Weidner has no

past relevant work experience under the social security guidelines because he does

not meet the substantial gainful activity threshold for any of his past employment.

(Id. at 61).  Weidner currently lives with his fiancee,  his two biological children, and

his fiancee's two children.  (Id. at 38).

Weidner applied for disability insurance benefits ("DIB") and supplemental

security income ("SSI") on April 15, 2010.  (Id. at 157-170).  Weidner alleges that

various physical and mental impairments, both individually and in combination,

render him totally disabled and unable to engage in any gainful employment.  (Id.)

Weidner alleges that he suffers from the following impairments which substantially

limit his ability to do basic work activities: anxiety and panic disorders, irritable

bowel syndrome, frequent diarrhea, and myoclonus.  The Bureau of Disability

Determination denied Weidner's initial application for benefits on August 26, 2011.

(Id. at 71-80).  The administrative law judge ("ALJ") thereafter held a hearing and

heard testimony from Weidner, Heidi Lawson (his fiancee), and a vocational expert.

(Id. at 31-66).

---

[2] References to "Tr. at __" are to the transcript of administrative proceedings
(Doc. 5) filed by the Commissioner on June 25, 2012.

During the hearing, Weidner testified that he spends between three and five hours per day on the toilet and spends the rest of his time with his fiancee and their children. (Id. at 200). Weidner reports suffering from frequent, lengthy, and severe panic and anxiety attacks, and persistent and unpredictable diarrhea requiring him to wear adult diapers when he leaves the home. (Id. at 44-45). Weidner reports that "twitching" at times prevents him from shaving or holding his children. (Id. at 43). Regarding his daily activities and abilities, Weidner takes the children to the park, the library, the playground, and the pool and assists his fiancee's daughters with homework. (Id. at 45, 200-03). Weidner reports that he does some household chores, to include washing dishes; doing laundry; making breakfast; and feeding, bathing, dressing, and playing with his infant son. (Id.) His treating psychologist rendered a formal opinion concluding that as a result of Weidner's mental health symptoms, based on his history and presentation, he would be unable to interact appropriately with the public, supervisors, and co-workers, or to respond appropriately to work pressures or changes in the routine work environment. (Id. at 701).

After the hearing, the ALJ issued an unfavorable decision finding that Weidner was not disabled. (Id. at 14-25). Specifically, the ALJ found that Weidner has the residual functional capacity ("RFC") to perform light exertional work with the following limitations: the work cannot involve in the repetitive use of his hands, cannot be high stress, and cannot involve frequent interaction with the public, co-workers, or supervisors, and the work must allow for ready access to a restroom. (Id. at 19). The vocational expert testified that various unskilled jobs exist in the

national and local economy within these limitations.  (Id. at 24).  On February 10,

2012, the Social Security Appeals Council denied Weidner's request for review of

the ALJ's unfavorable decision.  (Id. At 1-4).  On April 16, 2012, having exhausted

his administrative remedies, Weidner commenced this civil action to challenge the

decision of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   <u>Standard of Review</u>

District courts have jurisdiction to review decisions of the Commissioner

denying disability insurance benefits or supplemental social security income based

upon 42 U.S.C. § 405(g).  <u>See</u> <u>id.</u> ("Any individual . . . may obtain review of [any final

decision of the Commissioner] by a civil action commenced within sixty days after

the mailing to him of such decision.").  When considering such an appeal, district

courts have plenary review of all legal issues decided by the Commissioner. <u>Poulos</u>

<u>v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 91 (3d Cir. 2007); <u>Schaudeck v. Comm'r of Soc.</u>

<u>Sec.</u>, 181 F.3d 428, 431 (3d Cir. 1999); <u>Krysztoforski v. Chater</u>, 55 F.3d 857, 858 (3d

Cir. 1995). Judicial review of the Commissioner's findings of fact is much more

limited: the test is deferential and tasks the court to determine whether the factual

findings are supported by "substantial evidence." 42 U.S.C. § 405(g) ("The findings

of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive."); <u>see</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) ("Where  . . .

findings of fact are supported by substantial evidence, we are bound by those

findings, even if we would have decided the factual inquiry differently."); <u>see</u> <u>also</u>

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," but less than a preponderance, of the evidence. Brown, 845 F.2d at 1213 (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966); .

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066). The ALJ must indicate which evidence was accepted,

which evidence was rejected, and the reasons for rejecting certain evidence.

Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706–07. Therefore, the district court

must scrutinize the record as a whole on appeal. Smith v. Califano, 637 F.2d 968,

970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## III.   Sequential Evaluation Process

To receive disability benefits, social security claimants must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is considered to be

"unable to engage in substantial gainful activity" when "his physical or mental

impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. § 423(d)(2)(A).

The ALJ employs a five-step process in evaluating DIB and SSI claims.  20

C.F.R. § 416.920(a)(4).  The process requires the ALJ to query, in sequence, whether

the claimant: (1) is engaging in "substantial gainful activity"[3]; (2) has an impairment

---

[3] If the claimant is engaging in substantial gainful activity, the claimant is not disabled under the Act and the Commissioner proceeds no further.  Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 416.972.

that is "severe"[4] or a combination of impairments that is severe; (3) has an

impairment or combination of impairments that meets or equals the criteria of a

"listed impairment" or "listing"[5]; (4) has the "residual functional capacity" ("RFC")

to return to his or her past work[4]; and (5) if not, whether he or she can perform

other work in the national economy. Id. The burden of proof rests with the

claimant throughout the first four steps and with the Commissioner at step five.

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

---

[4] The determination of whether a claimant has any severe impairments at step two of the sequential evaluation is a threshold test. See 20 C.F.R. § 416.920(c). A claimant who does not have an impairment or combination of impairments which "significantly limits [his or her] physical or mental ability to do basic work activities" is not disabled, and the sequential evaluation proceeds no further. Id. "Basic work activities" include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. Id. § 404.1545(b). Mental or non-exertional abilities include the ability to understand, carry out, and remember simple instructions, and appropriately to supervision, coworkers, and work pressures. Id. § 1545(c). Once a claimant establishes an impairment, or a combination of impairments, that is severe, all medically determinable impairments, whether severe or non-severe, may be considered in the subsequent steps of the sequential evaluation process. Id. § 416.923.

[5] A listed impairment is one that appears in the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments). If the claimant has an impairment, or any combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled. Otherwise, the sequential evaluation process proceeds to step four.

[4] If the claimant has the RFC to do his or her past relevant work, the claimant is not disabled and the sequential evaluation process ends.

At step four, the Commissioner determines the claimant's RFC.  20 C.F.R.

§ 416.920(a)(4)(iv).  A claimant's RFC represents his or her maximum remaining

ability to do sustained work activities in an ordinary work setting on a regular and

continuing basis.  <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34475 (July

2, 1996).  The RFC assessment must include a discussion of the individual's abilities.

<u>Id.</u>; 20 C.F.R. §§ 404.1545, 416.945; <u>Fargnoli</u>, 247 F.3d at 40 (defining RFC as that

which an individual is still able to do despite the limitations caused by his or her

impairment(s)).  If the claimant does not have the RFC to perform his or her past

relevant work, or the claimant has no past relevant work, the burden at step five

shifts to the Commissioner to prove that the claimant can perform other work in

the national economy.  <u>See</u> <u>Kangas</u>, 823 F.2d at 777 (citing 20 C.F.R. § 404.1520(f)).

The ALJ in the matter *sub judice* conducted an evidentiary hearing and took

testimony from the claimant, the claimant's fiancee, and a vocational expert. The

ALJ applied the sequential evaluation process and concluded that Weidner is not

disabled and thus not entitled to disability benefits.  In step one, the ALJ found

that Weidner has not engaged in substantial gainful activity since June 30, 2006,

the alleged onset date of his disability.  (Tr. at 16).  In the second step, the ALJ

found that Weidner suffers from the following severe impairments: irritable bowel

syndrome, myoclonus, anxiety/panic disorder, and drug dependence.[5]  (<u>Id.</u>)

---

[5] The ALJ observed that Weidner also alleges disability due to allergies, asthma, and an L4-5 bulge, but concluded that those impairments do not cause more than minimal limitations in Weidner's functioning and are thus non-severe. (<u>Id.</u> at 17).

Next, in step three, the ALJ held that Weidner's impairments do not

separately or in combination meet or equal a listed impairment.  (Id. at 17).  The

ALJ found that Weidner does not satisfy the paragraph A criteria of listings 12.06

(governing anxiety related disorders) or 12.08 (governing personality disorders) nor

the paragraph A, B, or C criteria of listing 12.09 (governing substance addiction

disorders).  (Id. at 17-18).  In so holding, the ALJ observed that in order to satisfy

the criteria of listings 12.06 and 12.08, Weidner must at minimum satisfy paragraph

A of each listing[6]; the ALJ held that Weidner satisfies neither.  (See id.).  The ALJ

reached the same conclusion as to listing 12.09, noting that the listing is a reference

listing that is only met when symptoms associated with addictive use of substances

meet the requirements of other enumerated listings including, *inter alia*, organic

mental disorders (12.02), depressive syndrome (12.04), anxiety disorders (12.06), or

---

[6] Paragraph A of listing 12.06 requires medically documented evidence of at least one of the following: (1) generalized persistent anxiety accompanied by three out of four of the following: motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning; (2) a persistent irrational fear of a specific object, activity, or situation resulting in a compelling desire to avoid the dreaded object, activity, or situation; (3) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least one per week; (4) recurrent obsessions or compulsions which are a source of marked distress; or (5) recurrent and intrusive recollections of a traumatic experience which are a source of marked distress.  20 C.F.R. pt. 404, app. 1 § 12.06.  Paragraph A of listing 12.08 requires medically documented evidence of deeply ingrained, maladaptive patterns of behavior associated with one of the following: (1) secilusiveness or autistic thinking; (2) pathologically inappropriate suspiciousness  or hostility; (3) oddities of though, perception, speech, and behavior; (4) persistent disturbances of mood or affect; (5) pathological dependence, passivity, or aggressivity; or (6) intense and unstable interpersonal relationships and impulsive and damaging behavior.  Id. § 12.08.

personality disorders (12.08). (Id. at 18).  In concluding that Weidner does not meet the criteria of these listings, the ALJ made the following pertinent observations: First, that Weidner has mild restriction in daily activities, noting that he spends up to four (4) hours per day in the restroom but is able to assist with laundry, drive, and pick up his medications.  Second, that Weidner has moderate difficulties in social functioning but has been able to maintain a long-term relationship and takes his children to the park and pool. And third, that Weidner has mild difficulties with concentration, pace, and persistence. With respect to the latter, the ALJ observed that although Weidner alleges that his ability to follow directions and concentrate is only "okay" and occasionally induces panic attacks, he is nonetheless able to take care of his infant son and his fiancee's daughters. (Id. at 18-19).  The ALJ also observed that Weidner has not experienced any episodes of decompensation.  (Id. at 19). For these reasons, the ALJ concluded that Weidner's severe impairments neither collectively nor individually meet or equal a listed impairment.  (Id.)

The ALJ determined at step four that Weidner has no past relevant work, (id. at 24), and assessed Weidner's RFC. (Id. at 19-23).  The ALJ opined that Weidner has an RFC capacity to perform light work, with the following limitations: (1) he must avoid repetitive use of his hands; (2) he must work in a low-stress environment involving work with only occasional decision-making and occasional changes in the work setting and no high-paced production quotas; (3) he is limited to occasional interaction with the public, coworkers, and supervisors; (4) he must have access to a restroom within his work environment; and (5) he may have only occasional

physical interaction with the public.  (Id. at  19).  The ALJ did not consider the limitations noted by Weidner's treating psychologist in evaluating Weidner's RFC. (Id. at 21-22, 702).  Based on Weidner's age, work experience, education, and RFC, in addition to the testimony of a vocational expert, the ALJ found that Weidner is able to perform light, unskilled work and identified food and beverage order clerk, telephone quotation clerk, and order caller.  (Id. at 24).  The vocational expert opined, and the ALJ concluded, that these jobs exist in significant numbers in the local and national economies.  (Id.)  As a result, the ALJ concluded that Weidner is not disabled as defined by the Social Security Act, 42 U.S.C. § 401 *et seq.*

## IV.   **Discussion**

In the instant appeal, Weidner alleges that the ALJ erred (1) by failing to consider all of Weidner's diagnoses and manifest symptoms, in particular a diagnosis of antisocial personality disorder, in assessing Weidner's RFC; (2) by failing to afford appropriate controlling deference to the treatment records and opinion of Weidner's treating psychologist; and (3) by concluding that none of Weidner's impairments, whether individually or in combination, meet the criteria of any listing.  (Doc. 7 at 6-7).  Ultimately, the court concludes that the ALJ failed to adequately explain his rejection of the treatment records and opinion of Weidner's treating psychologist and will accordingly remand the matter to the ALJ for further proceedings consistent with this opinion.

Weidner submits that the ALJ erred by failing to afford "controlling" weight to the medical opinion of his treating psychologist, Dr. Wehman, with respect to the

extent of Weidner's various mental impairments.  (Doc. 7 at 11-13).  The parties are

in agreement as to the applicable law: an ALJ must afford significant weight to the

opinion of a claimant's treating physician if that opinion is not contradicted by

other objective medical evidence.  <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2010)

(quoting <u>Plummer</u>, 186 F.3d at 429 (treating physician rule applies "especially

'when their opinions reflect expert judgment based on a continuing observation of

the patient's condition over a prolonged period of time'")).  In <u>Morales</u>, the Third

Circuit identified this doctrine as a "cardinal principle guiding disability eligibility

determinations," holding that ALJs must assign great and often controlling weight

to the opinions of a claimant's treating physician.  <u>Id.</u> at 317-18; <u>also</u> <u>Fargnoli</u>, 247

F.3d at 43 ("Where a treating source's opinion on the nature and severity of a

claimant's impairment is well-supported . . . it will be given 'controlling weight.'").

The rule derives from the Commissioner's regulations, which provide that the

administration generally will "give more weight to opinions from . . . treating

sources." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

This rule of general deference is not without limitation, however, and the

ALJ may reject the opinion of a treating physician when that opinion is either not

supported "by medically acceptable clinical and laboratory diagnostic techniques"

or is "inconsistent with the other substantial evidence in . . . the record." <u>Fargnoli</u>,

247 F.3d at 43.  Thus, when the opinion of a claimant's treating physician is either

inconsistent with the physician's own treatment records or contrary to the opinions

of other examiners, the ALJ may decline the rule of deference and give limited or

12

no weight to the testimony, reports, and opinions of the treating physician.  <u>See</u>

<u>Brown v. Astrue</u>, 649 F.3d 193, 196-97 (3d Cir. 2011).  For example, when a treating

physician renders a conclusion which "expansively, and without explanation"

diverges from all other medical reports and opinions, and those conclusions are

inconsistent with the treating physician's own records, the ALJ may permissibly

reject the treating physician's opinion.  <u>O'Connor v. Comm'r of Soc. Sec.</u>, 466 Fed.

App'x 96, 100 (3d Cir. 2012); <u>see also</u> <u>Salles v. Cmm'r of Soc. Sec.</u>, 229 Fed. App'x

140, 148 (3d Cir. 2007) (no error in rejecting treating physician's opinion as to

disability in favor of another physician's opinion when the latter is more consistent

with the objective medical evidence).  Although the ALJ may "choose whom to

credit" in the face of conflicting evidence, the ALJ must nonetheless provide an

adequate explanation if the treating physician's opinion is ultimately rejected. <u>See</u>

<u>Johnson</u>, 529 F.3d at 203 (ALJ must "give some indication of the evidence which he

rejects and his reason(s) for discounting such evidence"); <u>Plummer</u>, 186 F.3d at 429

(same); <u>Dula v. Barnhart</u>, 129 Fed. App'x 715, 718-19 (3d Cir. 2005) ("[ALJ] retains

the duty to analyze treating source opinions and judge whether they are supported

by and consistent with the rest of the record.").

In assessing Weidner's RFC, the ALJ rejected the opinion of Dr. Wehman,

Weidner's treating psychologist of several years.  (Tr. at 19-23).  In his decision, the

ALJ highlighted several perceived inconsistencies therein, in his view rendering Dr.

Weidner's records unpersuasive.  (<u>Id.</u> at 21-22).  The ALJ noted that "[m]any of the

treatment notes are not internally consistent as they indicate normal functioning

and yet a 'regression' is marked at the top of the treatment note," (id. at 21), and that Dr. Wehman's indications that Weidner experienced "normal stream of thought, normal thought content, no hallucinations and intact cognitive functions" are inconsistent with the limitations urged by Dr. Wehman in his formal medical opinion. (Id. at 21, 23). The ALJ ultimately assigned little weight to Dr. Wehman's treatment records and notes and rejected his opinion as to Weidner's limitations, finding Dr. Wehman's conclusions to be inconsistent with his own treatment notes and other formal medical opinions. (Id. at 19-23).

The court concludes that the ALJ's decision must be remanded because it provides an insufficient explanation for rejecting Dr. Wehman's opinion. The court disagrees with Weidner, however, to the extent he asserts that the record necessarily *requires* the ALJ to assign controlling weight to the conclusions of Dr. Wehman. Rather, the court holds that the ALJ's decision and cursory rejection of Dr. Wehman's treatment notes and medical opinions provide an insufficient basis for determining whether that rejection and thus the ALJ's decision were supported by substantial evidence. See Cotter, 642 F.2d at 706-07 ("An explanation . . . of the reason why probative evidence has been rejected is *required* so that a reviewing court can determine whether the reasons for rejection were improper." (emphasis added)). The ALJ perceived inconsistencies between notations that Weidner had "regressed" while nonetheless presenting with normal thought content, a lack of hallucinations, and intact cognitive functioning, and concluded that the purported inconsistencies warrant a rejection of Dr. Wehman's opinions *in toto*. (Tr. at 21).

14

However, the ALJ did not consider, or rejected without explanation, Dr. Wehman's copious notations that Weidner had presented with dysphoric, angry, or anxious moods, and limited or constricted affect on numerous occasions. (Tr. at 267-29, 602, 648, 651, 653, 656, 658, 687, 798). Quite frankly, there may be perfectly logical psychological reasons for the perceived inconsistencies in Weidner's demeanor; indeed, the inconsistencies themselves may be indicative or symptomatic of Weidner's mental health disability. The ALJ also fails to offer any meaningful comparison between the conclusions of Dr. Wehman, who treated Weidner for years, and the notes of Ms. Cuff, who treated Weidner for only two months. (Tr. at 19-23).

The ALJ's failure to carefully measure Dr. Wehman's opinions against the remainder of the objective medical evidence significantly restricts the court's ability to determine whether his decision to reject Dr. Wehman's opinion is supported by substantial evidence. Johnson, 529 F.3d at 203; Plummer, 186 F.3d at 429; Dula, 129 Fed. App'x at 718-19. The lack of an adequate explanation also undermines the court's confidence in the balance of the ALJ's decision, as each material conclusion rests in large part on his rejection of Dr. Wehman's diagnoses and opinions. (See, e.g., Tr. at 20 (finding claimant not credible in part because no credited medical evidence supports subjective complaints); id. at 21-22 (rejecting Dr. Wehman's restrictive GAF score); id. at 22 (rejecting limitations urged by Dr. Wehman); also id. at 18-19 (concluding that claimant suffers only "moderate" difficulties with social functioning)). Because the court cannot ascertain from the decision whether

15

substantial evidence supports the ALJ's rejection of Dr. Wehman's formal opinion, the court must remand the matter for further proceedings and issuance of a new decision.[7]

## V.    Conclusion

For the reasons stated herein, the court will vacate the decision of the Commissioner and remand the matter for further proceedings and issuance of a new decision.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 7, 2014

---

[7] Because the court finds that the ALJ's error with respect to Dr. Wehman's opinion taints the remainder of the ALJ's decision, the court will not entertain the parties' remaining arguments with respect to the ALJ's listings determination and RFC assessment. Rather, the court directs the ALJ to accept supplemental information regarding Dr. Wehman's opinion and to reconsider all objective medical evidence and the claimant's subjective testimony on remand, consistent with this opinion.